UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GSC TECHNOLOGIES CORPORATION,

                    Plaintiff,

    v.                                      **DECISION AND ORDER**
                                              07-CV-461S

UMBRA, LLC, and UMBRA, INC.,

                    Defendants.

## I. INTRODUCTION

Presently before this Court are Plaintiff GSC Technologies Corporation's ("GSC") Motion for Judgment on the Pleadings seeking dismissal of Defendants' counterclaims (Docket No. 23) and Defendants Umbra, LLC and Umbra, Inc.'s (collectively, "Umbra") Motion to Amend their Answer (Docket No. 31). For the following reasons, Plaintiff's motion is denied and Defendants' motion is granted.

As an initial matter, this Court will grant Umbra's Motion to Amend its Answer. District courts have broad discretion to grant a party leave to amend its pleadings and the federal rules dictate that courts "freely give leave when justice so requires." Fed. R. Civ. P. 15 (a)(2); see also Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003). GSC argues that Umbra's proposed amended answer (Docket No. 32-2) is a futile re-pleading of insufficient facts and does not cure the alleged deficiencies in Umbra's counterclaims. Nonetheless, GSC has addressed Umbra's proposed amended answer and it is therefore not prejudiced by this Court considering the amended pleading at this time. Moreover, this Court finds that Umbra's proposed amendments are not futile. Accordingly, for the sake of efficiency and

1

expediency, and given the lack of prejudice, this Court will grant leave to amend and resolve GSC's Motion for Judgment on the Pleadings as against the amended answer (Docket No. 32-2).

## II. BACKGROUND

**A.     GSC's Complaint**

GSC manufactures folding tables and chairs and injection-molded housewares. (Complaint, Docket No. 1, ¶ 10.)  On December 29, 1998, Karim Rashid filed a patent application for a design entitled "Chair." (Complaint, ¶ 11.)  The United States Patent and Trademark Office later issued design patent 417,795 (the "Rashid patent") to Umbra, as Mr. Rashid's assignee. (Complaint, ¶ 11.)  Umbra marketed and continues to market what it views as the embodiment of the Rashid patent: a stackable chair with tubular, steel legs ("the OH chair"). (Complaint, ¶ 12.)

In 2006, the parties litigated Umbra's claim that GSC was manufacturing a chair — known as the AHHA chair — that infringed the Rashid patent. (Complaint, ¶ 14.)  The suit settled after GSC agreed to redesign the chair. (Complaint, ¶ 15.)  In particular, GSC agreed to reduce the area of the holes in the AHHA chair by 40%, and Umbra agreed to a redesign of the AHHA chair that included a hole in the seat, which GSC maintained was functional for stacking and comfort purposes. (Complaint, ¶ 15.)

After this settlement, GSC designed another chair — the V-16 GSC Chair — that GSC maintains does not infringe the Rashid patent. (Complaint, ¶¶ 16, 24.)  This chair allegedly required GSC to invest in changing the AHHA mold or make a new mold to accommodate the V-16 GSC chair design. (Complaint, ¶ 18.)  The V-16 GSC Chair has

a reduced area of holes, as demanded in the settlement, and does not have arm holes, which the OH and AHHA chairs do. (Complaint, ¶¶ 16, 25, and Exhibits A, B, and C.[1]) Umbra has advised GSC, however, that it believes that the V-16 GSC Chair infringes its Rashid patent. (Complaint, ¶¶ 17-27 and Exhibit D.)

Consequently, GSC filed this suit on July 18, 2007, seeking a declaratory judgment "that any manufacture, sale, offer for sale, and distribution of the V-16 GSC Chair in the United States, and any importation thereof into the United States, does not infringe the '795 Rashid Patent" and related relief pursuant to 35 U.S.C. § 285. (Complaint, ¶ 29.) GSC also seeks attorney's fees and injunctive relief prohibiting Umbra from falsely alleging that the V-16 GSC chair infringes the Rashid patent. (Complaint, Wherefore Clause, ¶¶ B, C.)

**B.     Umbra's Counterclaims**

Umbra designs, produces, and sells home products. (Amended Answer, Docket 32-2, ¶ 45.) It owns the Rashid patent, which is presently valid and in force, and it has sold the OH chair throughout the United States and elsewhere. (Amended Answer, ¶¶ 46, 48, 49.)

Referencing the prior litigation discussed above, Umbra maintains that the settlement agreement resolving that case contemplated that GSC would design, market, and sell only one chair using the mold used for the AHHA chair, and the design for that chair was specifically negotiated and then memorialized in the settlement agreement. (Amended

---

[1] A depiction of each chair is attached to the complaint: the OH chair is Exhibit A; the AHHA chair is Exhibit B; and the V-16 GSC Chair is Exhibit C.

Answer, ¶¶ 54, 55.) According to Umbra, the V-16 GSC chair is different than the chair design negotiated in the settlement agreement. (Amended Answer, ¶ 58.)

Umbra alleges that GSC's plan to market the V-16 GSC chair constitutes anticipatory breach of contract, because GSC's production, marketing, or sale of any chair, other than the one described in the settlement agreement, is a breach. (Amended Answer, ¶¶ 56-61.) Umbra also asserts causes of action for breach of contract relating to attorney's fees, trade dress infringement, and patent infringement. (Amended Answer, ¶¶ 62-64, 65-76, 77-87.)

### III. DISCUSSION

**A.    Legal Standard**

Rule 12 (c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12 (c). Courts faced with motions under Rule 12 (c) apply the same standard used to decide motions brought under Rule 12 (b). Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8 (a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it

liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. Goldstein, 516 F.3d at 56; ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8 (a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 129 S.Ct. at 1950. First, statements that are not entitled to the

presumption of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away.  See Iqbal, 129 S.Ct. at 1950.  Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim.  Id.

**B.     Breach of Contract Claims**

To establish a claim for breach of contract, a plaintiff must demonstrate (1) that a contract between the parties existed, (2) that the plaintiff performed its obligations under the contract, (3) that the defendant breached its obligations under the contract, and (4) that the plaintiff suffered damages.  Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994); W.B. David & Co., Inc. v. DWA Commc'ns, Inc., No. 02 Civ. 8479, 2004 WL 369147, at *2 (S.D.N.Y. Feb. 6, 2004).

GSC does not challenge the sufficiency of Umbra's pleadings, but rather, argues that Umbra's interpretation of the settlement agreement is unreasonable and therefore its claim is not plausible under Iqbal.

Section 1 B of the settlement agreement, as amended, provides as follows:

> GSC shall not make, sell, or license the AHHA chair, as the same is described in the Litigation, nor make, sell, license, import or cause to be imported any chair embodying its own United States Design Patent No. D525,446.  Notwithstanding the foregoing, GSC is permitted to make, offer to sell, sell, license, use, import, and cause to be imported *a chair*, the body of which is depicted in the drawing attached hereto as Exhibit A, and customers of GSC, both direct and indirect, are

permitted to import, offer to sell, sell, and use said chair.

(Settlement Agreement, as amended, Docket No. 4-2, ¶ 1 B (emphasis added).)

Umbra's position is that "a chair" is singular and refers to GSC making only one chair — the one depicted in the referenced drawing. Umbra's claim is that by planning to make and market the V-16 GSC chair, which is *not* the one depicted in the settlement agreement, as amended, GSC has breached the agreement. (Amended Answer, ¶¶ 56-61.) GSC argues that the unambiguous language of section 1 B, as amended, renders absurd (and implausible) Umbra's argument that GSC agreed to make only one chair.

At this stage, however, this Court cannot conclude as a matter of law that Umbra's claim is implausible. Umbra has plead each of the elements of a breach of contract cause of action, which GSC does not dispute, and its claim that the singular "a chair" in the settlement agreement, as amended, refers to a single chair is not implausible or absurd, as GSC argues. Competing interpretations of contract language must be resolved at a later stage. That GSC disputes Umbra's proffered construction of the settlement terms in favor of its own construction is not a basis to dismiss the contract claims at this juncture. Accordingly, GSC's request to dismiss Umbra's breach of contract claims[2] will be denied.

### 3. Trade Dress Infringement Claim

Umbra's third counterclaim is for trade dress infringement pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). "The Lanham Act gives a seller or producer the exclusive right to "register" a trademark, . . . and to prevent his or her competitors from

---

[2] GSC's request to dismiss Umbra's second cause of action for breach of contract relating to the recovery of attorney's fees is dependent on Umbra's first counterclaim for breach of contract being dismissed. Therefore, because this Court will not dismiss the first counterclaim, GSC's request to dismiss the second counterclaim will also be denied.

using that trademark . . . ." Qualitex Co. v. Jacobson Prods. Co., Inc., 514 U.S. 159, 162, 115 S.Ct. 1300, 1302, 131 L.Ed.2d 248 (1995). This protection extends not only to word marks, but also to the design of a product as a form of trade dress. See Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209, 120 S.Ct. 1339, 1342, 146 L.Ed.2d 182 (2000) (§ 43(a) of the Lanham Act "embrace[s] not just word marks . . . but also 'trade dress' . . . [which] encompass[es] the design of a product"). "Trade dress is the 'overall composition and design [of a product], including size, shape, color, texture, and graphics.'" Waddington N. Am. Bus. Trust v. EMI Plastics, Inc., 02-CV-3781, 2002 WL 2031372, at *2 (E.D.N.Y. Sept. 5, 2002) (quoting Coach Leatherware Co., Inc. v. AnnTaylor, Inc., 933 F.2d 162, 167 (2d Cir. 1991))

A party claiming trade dress infringement must allege that (1) its trade dress is distinctive as to the source of the product, (2) the defendant's product dress creates a likelihood of customer confusion, and (3) its trade dress is not functional. See Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 377 (2d Cir. 1997); Fibermark, Inc. v. Brownville Specialty Paper Prods., Inc., No. 7:02-CV-0517, 2005 WL 1173562, at *3 (N.D.N.Y. May 11, 2005); 15 U.S.C. § 1125(a).

GSC seeks dismissal of Umbra's trade dress claims on the basis that, as a matter of law, no ordinary observer could confuse the designs of the OH and V-16 GSC chairs, because the OH chair has four holes and the V-16 GSC chair has only two holes. Thus, GSC argues that Umbra's claim must be dismissed under Iqbal because it is implausible that such disparate designs could cause customer confusion.

At this early stage, however, this Court cannot conclude that Umbra fails to state a

claim; it clearly does. It has plead that the OH chair's design is distinctive and indicative of source (Amended Answer, ¶¶ 66-69, 74), that the V-16 GSC chair is highly similar and sold in close competitive proximity (Amended Answer, ¶¶ 71-74), and the design is ornamental (not functional) (Amended Answer, ¶¶ 46, 66). The merits of this claim, which is what GSC's motion addresses, cannot be adjudicated at the motion to dismiss stage. Contrary to GSC's arguments, Umbra's trade dress claim is not implausible simply because GSC views the design differences in the two chairs as prominent and therefore unlikely to cause customer confusion. Umbra must be afforded the opportunity to develop and present evidence in support of its properly-plead claim. GSC's request to dismiss this claim will therefore be denied.

### 4. Patent Infringement Claim

Umbra's fourth counterclaim is for patent infringement under 35 U.S.C. § 271. "To state a claim for patent infringement, the patent holder must establish that the accused infringer made, used, offered to sell, sold, or imported the patented invention within the United States during the term of the patent, and that he or she did so without authority." Tailored Lighting, Inc. v. Osram Sylvania Prods., Inc., 713 F. Supp.2d 184, 186 (W.D.N.Y. 2010); 35 U.S.C. § 271(a). In this regard, "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." McZeal v. Spring Nextel Corp., 501 F.3d 1354, 1357 (Fed. Cir. 2007).

GSC again relies on its contention that "even a casual observer" would immediately identify several distinct design differences in the chairs at issue. This, however, is simply GSC's position. It cannot be said at this stage that as a matter of law, no reasonable

9

person could confuse the two designs. This is not the time for claim construction, nor does GSC's position that Umbra will be unable to show confusion render its patent infringement claim implausible.[3] The only thing at issue now is whether Umbra has adequately plead its claim, and this Court concludes that it has.

Umbra has plead that GSC is infringing its Rashid patent by "making, using, offering to sell, selling, promoting and importing, in this District and elsewhere in the United States, a chair that uses or embodies the patented invention shown and described in the [Rashid] Patent." (Amended Answer, ¶ 78.) Umbra includes allegations concerning the designs of each chair (Amended Answer, ¶¶ 80-82) and GSC's knowledge of Umbra's patent rights (Amended Answer, ¶¶ 83-86). From these allegations, this Court concludes that GSC is on adequate notice as to what it must defend against. See McZeal, 501 F.3d at 1357. GSC's request to dismiss this claim will therefore be denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion is denied and Defendants' motion is granted. Defendants are directed to file their amended answer as directed below.

---

[3]After briefing concluded, GSC sought leave to supplement the record, bringing to this Court's attention the unpublished decision in Colida v. Nokia, Inc., 347 Fed.Appx. 568 (Fed. Cir. 2009). Although this Court granted leave to supplement, Colida is not factually akin to the instant matter and therefore not instructive. In Colida, the Federal Circuit affirmed a district court's determination that the plaintiff's design for a cell phone was so dissimilar to defendant's design that his claim for infringement was not plausible. But the plaintiff in Colida was a pro se, litigious individual who brought numerous frivolous patent cases, so many that the district court entered an anti-filing injunction against him. See Colida, 347 Fed.Appx. at 569. In addition, plaintiff did little on appeal, filing only a two-page informal brief that offered no argument or evidence as to why the district court erred. Id. Thus, the plaintiff never challenged the district court's implausibility finding, which was a significant factor in the Circuit's affirmance. See Colida, 347 Fed.Appx. at 571 ("*Given Colida's complete silence on these and other issues*, we agree [with the district court's implausibility finding]) (emphasis added).

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 23) is DENIED.

FURTHER, that Defendants' Motion for Leave to Amend Pleadings (Docket No. 31) is GRANTED.

FURTHER, that Defendants shall file their proposed amended answer (Docket No. 32-2) as the amended answer in this action by April 28, 2011.

SO ORDERED.

Dated:     April 11, 2011
           Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court